UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL G. GEORGES, ET AL
          Plaintiffs,                              CASE NO. 1:30-CV-12313-GAO

VS.                                                ADVERSARY
                                                   PROCEEDING NO. 02-1352

UNITED STATES OF AMERICA, ET AL,
          Defendants.

## PLAINTIFFS' OPPOSITION TO UNITED STATES' EMERGENCY MOTION THAT THE DISTRICT COURT WITHDRAW THE REFERENCE OF THIS ADVERSARY PROCEEDING FROM THE BANKRUPTCY COURT

Now come the Plaintiffs, Michael Georges ("Debtor"), Erik M. Georges and Kara Georges Huntington ("Plaintiffs"), and oppose the United States of America's Emergency Motion that the District Court Withdraw the Reference of this Adversary Proceeding from the Bankruptcy Court ("Motion to Withdraw"). As grounds therefore, the Plaintiffs state the following:

## BANKRUPTCY PROCEDURAL BACKGROUND

1.    An Adversary Complaint was filed by the Debtor in the United States Bankruptcy Court ("Adversary Proceeding") on September 26, 2002. The Debtor requested declaratory relief to determine whether certain taxes were dischargeable. The Debtor also sought a determination from the court regarding what was the Debtor's beneficial interest in a Real Estate Trust.

2.    A pre-trial conference was conducted on December 10, 2002.

3.    At said conference, the Bankruptcy Court asked counsel for the United States if the United States intended on filing a counterclaim pursuant to Sec. 523(a)(1)(C). Counsel responded that they had not made said determination. The United States agreed to a deadline for making an election regarding raising a 523(a)(1)(C) objection ("523 election"). (A copy of the transcript of the Bankruptcy Court Adversary Proceeding p. 9-10 covering this subject is attached as Exhibit "A".)

4.  On December 10, 2002 the Bankruptcy Court issued an Order giving the United States a deadline for taking a position on Sec. 523(a)(1)(C) for January 6, 2003. (A copy of the Bankruptcy Court's Order is attached as Exhibit "B" ("Pretrial Order"))

5.  The United States did not make an election pursuant to said Order.

6.  The United States did not file a counterclaim in the Adversary Proceeding.

7.  The Pretrial Order gave the Plaintiff ten (10) days to move to add the Beneficiaries of the Trust as Plaintiffs.

8.  The United States did not file a Motion to Reconsider the Court's Order. (A copy of the docket for Adversary Proceeding is attached as Exhibit "C".)

9.  Debtor filed the Plaintiffs' Motion to Amend to add Eric Georges and Kara Georges Huntington as Plaintiff.

10. The United States did not object to the Motion to Amend.

11. The Motion to Amend was allowed on January 24, 2003. The Court noted that no objection was filed. (A copy of the January 24, 2003 Order is attached hereto as Exhibit "D".)

12. On June 11, 2003, the Plaintiffs requested a trial date.

13. On June 16, 2003, the Bankruptcy Court issued a Pretrial Order setting a trial date for November 21, 2003. (A copy of said Order is attached as Exhibit "E".)

14. On November 10, 2003, the United States filed a Motion to Continue the Trial which was denied. (A copy of the Order is attached as Exhibit "F".)

15. On November 19, 2003, the Debtor filed a Motion to Prevent the United States from Raising Sec. 523(a)(1)(C) as a defense ("Motion to Quash"). (A copy of said Motion is attached as Exhibit "G".)

16. On November 19, 2003, the United States filed the Motion to Withdraw.

17. On November 20, 2003, the United States Bankruptcy Court stayed the Adversary Proceeding at the request of the United States.

18. The United States Bankruptcy Court had not ruled on the Motion to Quash before staying the Adversary Proceeding.

## FACTUAL BACKGROUND

19.    On April 26, 1972, Michael Georges and his Non-Debtor Spouse Kendra B. Georges purchased property located at 14 Tracey's Pathe in Marshfield, Massachusetts ("Tracey's Pathe").

20.    On July 29, 1977, the Debtor and Kendra B. Georges ("Settlers") created and recorded an intervivos realty trust entitled the Georges Realty Trust ("Trust") in which the Settlers were named Trustees. Their children, Eric Michael Georges and Kara Georges, were identified within the Trust as the beneficiaries.

21.    At said time, Eric Georges was six (6) and Kara Georges was two (2). By the Trust's terms, the term of the Trust was 25 years.

22.    On July 29, 1977, Michael Georges and Kendra Georges transferred title to Tracey's Pathe to the Georges Realty Trust. At said time, Michael and Kendra Georges were current with their federal income taxes.

23.    On April 14, 1989, the Trust purchased property located at 56 Weston Farm Pathe in Marshfield, Massachusetts ("Weston Farm Pathe"). Proceeds from the sale of the Tracey's Pathe was used to purchase the property. At the time of the purchase, Michael and Kendra Georges were delinquent in payment of their taxes for 1987.

24.    A tax lien was recorded by the Internal Revenue Service ("IRS") on December 14, 1993 against all the property rights of Michael G. Georges and Kendra B. Georges for the tax years 1987, 1988, 1989, 1990 and 1991.

25.    A tax lien was recorded by the IRS on June 28, 1994 against all the property rights of Michael G. Georges and Kendra B. Georges for the tax year 1992.

26.    The tax returns for tax years 1987 through 1991 were filed on November 20, 1992. The tax returns for tax year 1992 was filed on December 3, 1993. The Debtor and his wife did not submit an offer of compromise for the tax periods 1987 through 1992.

27.    The Debtor filed his Chapter 7 bankruptcy on April 30, 2002.

28.    On June 1, 1999, the beneficiaries each transferred a five Percent (5%) beneficial interest to the Debtor.

29.    The Debtor is currently holding a 10% beneficial interest in the Georges Realty Trust. Kara G. Huntington and Eric M. Georges each currently hold a 45% beneficial interest in the Realty Trust.

30.    On July 18, 2001, Georges Realty Trust transferred title to Weston Farm Pathe to Richard and Kelly McManus for consideration of $450,000.00.

31.    At said sale, the closing agent held $130,093.80 in escrow to satisfy the Internal Revenue Service's liens. Said proceeds are currently in the possession of the closing agent waiting a determination of the Adversary Proceeding.

## LEGAL ARGUMENT
### Core Proceeding

As stated in the facts, in 2001 the Georges Realty Trust sold property held by the Trust. At the time of the sale, the IRS held a lien against the property of the Debtor and his Non-Debtor Spouse. Record title indicated the Debtor was a 10% beneficial owner of the Trust at the time of the transfer. The Debtor's children each held a 45% beneficial interest in the Trust. At the time of the sale, the closing agent determined how much was due the IRS and agreed to hold the payment due towards the taxes in escrow until the matter was resolved.

Approximately one (1) year after the sale of the house, the Debtor filed a Chapter 7 bankruptcy. He filed an Adversary Proceeding seeking Declaratory Relief regarding; 1) the dischargeability of the taxes due for 1987, 1988, 1989, 1990, 1991 and 1992; and 2) a determination of the beneficial ownership of the proceeds which were potentially subject to the IRS lien. The beneficiaries were subsequently added as Plaintiffs pursuant to the Bankruptcy Court's Order.

In order to file a Motion to Withdraw under 28 USC Sec. 157(d) the United States must prove cause. The United States argues that the Bankruptcy Court lacks jurisdiction to determine the issue of beneficiary ownership in the trust property. As its defense in the Adversary Proceeding, the United States requested the Bankruptcy Court to determine either the Debtor was the sole beneficiary of the Trust or the Trust was a sham. To the extent that the Bankruptcy Court determined the Trust was an alter ego/nominee trust, the trust property was property of the Debtor's bankruptcy estate on the day he filed his Chapter 7 petition.

In <u>Celotex Corp. vs. Edwards</u>, 514 U.S. 300, 115 S.Ct. 1493, L.Ed. 2d 403 (1995) the United States Supreme Court stated the following:

> The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute. Title 28 U.S.C. [Sec.] 1334(b) provides that 'the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.' The district courts may, in turn, refer 'any or all proceedings rising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district.' <u>28 U.S.C. Sec. 157(a)</u>.

<u>Id</u> at 307.

Pursuant to 28 U.S.C. Sec. 157(b)(1): "Bankruptcy Judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments subject to review under section 158 of this title."

Pursuant to 28 U.S.C. Sec. 157(b)(2), "core proceedings include, but are not limited to-- ... (E) orders to turnover property of the estate;..., (I) determinations as to the dischargeability of particular debts;..., (K) determinations of the validity, extent, or priority of liens;... (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims."

The United States argues the beneficial interest issue is a potential "related to" matter under Sec. 157(a) that will not effect the administration of the estate. The determination of the beneficial interest is a core proceeding. Given the United States' position that the 90% beneficial interest at issue and is the Debtor's property based on its alter ego/nominee theory, the trust property in issue is the Debtor's property regardless of whether it is "administered".

In the case of <u>In Re Grell</u>, 83 BR 652 (Bnkrpty D.Minn 1988), a creditor filed an adversary proceeding seeking to bar the debtor's discharge, or in the alternative, a determination of non-dischargeability of the creditor's debt under Section 523. Subsequently, the complaint was amended by the creditor to seek a declaratory judgment as to whether the debtor held an interest in dairy termination program payments received by his non-debtor spouse.

If the Bankruptcy Court determined the debtor did have an interest in the payments, said payments secured by the creditor's claim. There would not be any remaining interest available for the estate. The Ch. 7 Trustee had previously filed a no asset report.

To determine jurisdiction under 28 U.S.C. Sec. 157(b)(2), the Bankruptcy Court pointed out that the only way the payments could be estate property, is if it was determined that the Debtor had the real, albeit concealed, interest in the payments at the commencement of the bankruptcy case. Id at 657. The Bankruptcy Court determined "If the property identified in Counts Two, Three, Four and Nine is estate property or property of the Debtor, then determination of those causes of action are core proceedings under 28 U.S.C. [Sec.] 157(b)(2)(K). . . .This is so, even though the estate's and the Debtor's interests in the property might be fully encumbered." Id.

In In Re Kondora, 194 BR 202, (Bnkrptcy Iowa 1996), adopted half-siblings of the Debtor filed a complaint asserting that their claims were non-dischargeable under Section 523(a)(4). The Debtor's ex-husband filed a petition for intervention. He asserted that funds garnished by the plaintiffs from a joint bank account should be returned to him. The Bankruptcy Court initially determined whether it had jurisdiction over the ex-husband's claim.

"Bankruptcy Courts have subject matter jurisdiction over disputes relating the alleged property of the bankruptcy estate. They lack jurisdiction, however, over controversies between third-party creditors which do not involve the debtor or property of the debtor or of the estate. Proceedings concerning property of the estate are core proceedings if they effect the liquidation of assets of the estate or adjust the debtor– creditor relationship." Id at 207.

The Bankruptcy Court concluded that it had subject matter jurisdiction over both the dischargeability proceeding and the intervener's claim. "Steven Kondora's request for relief can also be classified as a core proceeding as it requires a determination regarding rights in property which is allegedly property of the estate, i.e. the bank account at Hawkeye Bank in the names of both Debtor and Steven Kondora." Id.

## TIMELINESS OF WITHDRAWAL

Pursuant to 28 U.S.C. Sec. 157(d): "The District Court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." It is Plaintiffs' position that the United States' Motion to

Withdraw: 1) filed 11 months after the Plaintiffs' Motion to Amend; 2) filed after the Bankruptcy Court denied a Motion to Continue the Trial; and 3) filed on the eve of trial was not a timely motion as required by 28 U.S.C. Sec. 157.

In <u>United States vs. Kaplan</u>, 146 BR 500 (D.Mass. 1992) the Chapter 7 Debtor filed an adversary proceeding against the Internal Revenue Service ("IRS") to determine liability as a "responsible person". The IRS filed a motion pursuant to 28 U.S.C. Sec. 157(d) to withdraw the reference to the Bankruptcy Court of said Adversary Proceeding.

The District Court declined to withdraw the matter. "The express language and legislative history of [Section] 157(d) made clear that congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court unless withdrawal was essential to preserve a higher interest... Accordingly, courts have been cautious in applying [Section] 157(d) so that the exception does not swallow the rule... Withdrawal, even discretionary withdrawal, is permitted in only a limited number of circumstances." <u>Id</u> at 502-503.

"Consistent with the plain language of the statute, this court will apply a two prong test to any motion requesting discretionary withdrawal from a bankruptcy court: (1) the motion must be <u>timely</u> filed, and (2) the movant must demonstrate <u>cause</u> for the withdrawal. The movant carries the burden to show that both elements of [Section] 157(d) have been met. <u>Id</u>.

"Despite the absence of a statutory definition, courts are in general agreement that a motion is timely 'if it was made as promptly as possible in light of the developments in the bankruptcy proceeding', or, more simply, if it was made 'at the first reasonable opportunity'." <u>Id</u> at 503.

The United States was put on notice of the potential jurisdictional issue from the date the complaint was filed. A key factor in determining timeliness is: At what stage is the bankruptcy proceeding? To the extent the proceeding has been more developed, the motion becomes less timely. <u>United States vs. Kaplan</u> at 504. Another factor the District Court should consider is whether the Bankruptcy Court has determined the issue of abstention. To the extent the Bankruptcy Court's Order of December 10, 2002 implied the Bankruptcy Court was not going to abstain from hearing the beneficiaries' claims, the United States should have appealed, objected or moved to withdraw at that time.

# WAIVER OF CLAIM OF LACK OF JURISDICTION

The United States, for the first time in this adversary proceeding, is claiming that the Bankruptcy Court lacks jurisdiction. The United States waived its defense when it did not make a timely Motion for Withdrawal. See In Re Securities Group, 124 BR 875, 896 (Bnkrptcy M.D. Fla. 1991). Vacated and remanded on other grounds. In Re Securities Group 1980, 74 F.3d 1103 (11th Cir. 1996). Based on the United States failure to file either a Motion for Reconsideration or an appeal of this Bankruptcy Court's Order allowing the Plaintiff a Motion to Amend to Add the Beneficiaries, the United States assented to the jurisdiction of the Bankruptcy Court. The United States also failed to object to the Motion to Amend.

The United States specifically conceded to the jurisdiction of the Bankruptcy Court in the United States' Answer to the Amended Complaint. (A copy of the United States' Answer is attached as Exhibit "H".) In response to the Plaintiff's allegation that the proceeding was a core proceeding, Plaintiffs denied the determination of beneficial interest was a core matter, but then responds: "The United States consents to entry of final orders or judgment by the bankruptcy court." United States' Answer, Page 6.

"Once consent has been freely given under Section 157(c)(2), a party should not be entitled, once dissatisfied with the results obtained thereby, to seek more favorable review elsewhere." In Re Zachman Homes, Inc., 83 BR 633, 640 (Bkrtcy. D.Minn 1985)

Given the United States has waived jurisdiction based on: 1) its failure to act on a timely basis; and 2) its specific consent to the Bankruptcy Court's jurisdiction over the United States in this proceeding, the District Court should deny the United States' Motion to Withdraw.

# DISCHARGEABILITY ISSUES SHOULD REMAIN
# WITH THE BANKRUPTCY COURT

If the United States District Court determines that the Bankruptcy Court does not have jurisdiction over the beneficiaries' claim, dischargeability of the taxes should be determined by the Bankruptcy Court. The United States admits in its Motion to Withdraw that the dischargeability issue is a core proceeding.

The United States argues the Plaintiffs are forum shopping when it is the United States doing the shopping. The United States failed in its attempt to continue the trial date, and was

facing a potential Motion to Quash of its defense pursuant to Sec. 523 (a)(l)(C) when it filed its Motion to Withdraw.

If the Bankruptcy Court allows the United States to raise the Sec. 523 defense, the facts necessary to prove a willful attempt to evade or defeat the tax are similar to the facts necessary to determine either the beneficial interest or the alter ego aspects of the Trust. Although the United States has a potential argument for judicial economy, that argument weakens the closer the proceeding approaches the day of trial. See U.S. v. Kaplan, 146 BR 500, 505 (D.Mass 1992)

Whether the United States will be forced to defend its position in two different courts was solely in the control of the United States. Its failure to act timely has prejudiced the Debtor. The Debtor is ready for trial. A removal to District Court could postpone a decision regarding dischargeability and his Chapter 7 bankruptcy for more than a year.

Based on the above, the Plaintiffs oppose the United States' Motion to Withdraw and request the United States District Court to decline its discretion to withdraw the Adversary Proceeding from the Bankruptcy Court.

## REQUEST FOR ORAL ARGUMENT

MICHAEL G. GEORGES, ET AL,
By their Attorneys,
STEPHEN E. SHAMBAN LAW OFFICES, P.C.

By: _____
ANN BRENNAN (BBO 237770)
P.O. BOX 850973
639 GRANITE STREET
BRAINTREE, MA  02185-0973
(781) 849-1136

cdh.georges.appeal12103